UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X
                                                    :
SHANNON WILLIAMS,                                   :
                                                    :
                              Plaintiff,            :
                                                    :        16-CV-2061 (VSB)
             -against-                              :
                                                    :        **MEMORANDUM & OPINION**
NEW YORK STATE UNIFIED COURT                        :
SYSTEM OFFICE OF COURT                              :
ADMINISTRATION, JOSEPH ACCETTA,                     :
individually and as Chief Clerk of the              :
Westchester County Surrogate's Court,               :
JOHANNA O'BRIEN, individually and as                :
Deputy Chief Clerk of the Westchester County        :
Surrogate's Court, SUSAN NEWMAN LOEHR               :
individually and as Commissioner of Jurors of       :
Westchester County,                                 :
                                                    :
                              Defendants.           :
                                                    :
--------------------------------------------------------X

Appearances:

Sandra D. Parker
Law Office of Sandra D. Parker
New York, New York
*Counsel for Plaintiff*

Michael A. Berg
*for* Eric T. Schneiderman
Attorney General of the State of New York
New York, New York
*Counsel for Defendants Joseph Accetta, Johanna O'Brien, and Susan Newman Loehr*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Shannon Williams, an African-American male and former clerical employee,

brings claims of race and gender discrimination, retaliation, and hostile work environment

against his former employer, the New York Unified Court System Office of Court

Administration ("OCA"), Joseph Accetta, Johanna O'Brien, and Susan Newman Loehr in their individual and official capacities (the "Individual Defendants," and collectively with OCA, "Defendants"). Specifically, Plaintiff asserts: (1) a claim against OCA for racial discrimination, retaliation, and hostile work environment, in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII") ("Count I"); (2) a claim against the Individual Defendants in their official capacities for deprivations of equal protection and the right to make and enforce contracts on the basis of race, in violation of 42 U.S.C. § 1981 and § 1983 ("Count II"); (3) a claim against the Individual Defendants in their individual capacities for deprivation of equal protection on the basis of race, in violation of § 1983 ("Count III"); and (4) a claim against the Individual Defendants in their individual capacities for disparate treatment on the basis of race and gender, in violation of New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL") ("Count IV"). The Individual Defendants move to dismiss (1) Count II for lack of subject matter jurisdiction; (2) Counts II,[1] III, and IV for failure to state a claim of (a) discrimination against any of the Individual Defendants based on Plaintiff's suspension and termination, and also against Defendant O'Brien based on the decision to place Plaintiff on probation, (b) a hostile work environment, and (c) retaliation (i) against the Individual Defendants based upon general allegations against "Defendants" and Plaintiff's suspension and termination, and (ii) against Defendant O'Brien based on the decision to place Plaintiff on probation; and (3) Count IV to the extent it alleges discrimination based on sex. For the reasons stated herein, the Individual Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

---

[1] Defendants move to dismiss Count II for failure to state a claim on which relief can be granted in the alternative should I deny their motion to dismiss that Count for lack of subject matter jurisdiction.

# I.  **Factual Background**[2]

Plaintiff is an African American male who began working for OCA in about August 2000 as a Court Office Assistant assigned to the Westchester Court Surrogate's Court ("Surrogate's Court").  (SAC 6, ¶ 37.)[3]  During his fourteen years of employment, Plaintiff performed his duties satisfactorily.  (*Id.* at 7, ¶ 38.)  Approximately four years after beginning his employment, Williams earned the position of Senior Court Office Assistant.  (*Id.* at 7, ¶ 39.)  In about March 2007, Plaintiff earned the position of Senior Surrogate's Court Clerk.  (*Id.* at 7, ¶ 40.)  His duties in that capacity included supervising other employees assigned to work in the Clerk's Office of the Surrogate's Court.  (*Id.* at 7, ¶ 41.)

Defendant Accetta, a Caucasian male, was the Chief Clerk of the Surrogate's Court.  (*Id.* at 2–3, ¶ 11.)  His duties included the management and supervision of employees working in the Surrogate's Court, including the supervision of Plaintiff and Defendants O'Brien and Loehr, as well as subordinates who reported to Plaintiff.  (*Id.* at 3, ¶ 12.)  Defendant O'Brien, a Caucasian female, was the Deputy Chief Clerk of the Surrogate's Court.  (*Id.* at 3, ¶ 13.)  Her duties included the management and supervision of employees at the Surrogate's Court, including Plaintiff and the subordinates who reported to Plaintiff.  (*Id.* at 3, ¶ 14.)  Defendant Loehr, a Caucasian female, was the Commissioner of Jurors of Westchester County.  (*Id.* at 3, ¶ 15.)  Defendant Loehr did not supervise Plaintiff at any point during his employment.  (*Id.* at 3, ¶ 16.)

---

[2] The following factual summary is drawn from the allegations of the second amended complaint, which I assume to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.  I also consider the declarations attached to the Individual Defendants' motion to dismiss for lack of subject matter jurisdiction based upon their argument that certain claims are barred by the Eleventh Amendment.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

[3] "SAC" refers to Plaintiff's second amended complaint filed on December 13, 2016.  (Doc. 33.)  The citations in this Order to the second amended complaint refer both to the numbered paragraph and the page number for clarity.

Plaintiff was "one of the very few non-Caucasian and male non-Caucasian employees who had supervisory responsibilities over Caucasian employees" working in the Surrogate's Court. (*Id.* at 7, ¶ 42.) Williams alleges that his Caucasian subordinates "openly challenged his authority, disregarded his directives, and expressed dissatisfaction to management," which included Defendants O'Brien and Accetta. (*Id.* at 7, ¶ 43.) His subordinates also "openly questioned Williams's competence, and attempted to dictate how Williams should execute his duties," but did not subject Caucasian supervisory personnel to the same treatment. (*Id.* at 7–8, ¶¶ 45–46.) Defendants O'Brien and Accetta encouraged this insubordinate conduct and "were receptive to the numerous challenges" to Plaintiff's authority by the subordinates. (*Id.* at 7, ¶ 44.)

Williams complained to Accetta, O'Brien, and others about this treatment. (*Id.* at 8, ¶ 47.) Rather than remedy the situation, Defendants "subject[ed Williams's] performance to punitive scrutiny and criticism" by "repeatedly trying to take disciplinary action against Williams based on the bogus complaints lodged by his subordinates." (*Id.* at 8, ¶¶ 48–49.) During meetings with Williams about the complaints made by his subordinates, Defendants allegedly "reprimanded Williams" and "attempted to force Williams to relinquish or reduce his authority over said Caucasian subordinates." (*Id.* at 8, ¶ 51.) When Defendant O'Brien did so, Williams then complained to Defendant Accetta about what had happened, and Accetta took no action in response. (*Id.* at 9, ¶¶ 53–54.) Instead, in alleged retaliation, Defendant Accetta assigned Defendant O'Brien to conduct Williams's performance review despite the fact that O'Brien lacked knowledge of Williams's performance of his duties to conduct such a review. (*Id.* at 9, ¶ 54.) Defendant O'Brien rated Williams's performance as poor, (*id.* at 9, ¶ 55), and when Plaintiff complained about O'Brien's unfair review to Defendant Accetta, Accetta did nothing in

response, (*id.* at 9, ¶ 57).

Other alleged discriminatory and retaliatory acts included (1) Defendant Accetta calling Williams at his home and falsely accusing him of being absent without leave despite the fact that Defendant Accetta had previously approved of the time off, and (2) Defendant O'Brien denying Williams's request to attend an in-house interview for a promotional position, despite "routinely grant[ing] such requests when made by Caucasian employees." (*Id.* at 10, ¶¶ 59, 60.)

Other male non-Caucasian employees were subjected to similar treatment. (*Id.* at 10, ¶¶ 59–61.) In about 2011, Defendant Accetta, Defendant O'Brien, and other Caucasian employees, assigned Williams and another non-Caucasian male additional duties above and beyond their regular assignments without imposing additional responsibilities on the Caucasian employees. (*Id.* at 10–11, ¶¶ 62, 63.)

Defendants have also taken punitive disciplinary measures against Williams while "ignoring or dismissing the misconduct of Caucasian employees." (*Id.* at 11, ¶ 65.) This included suspending Williams "in connection with an unconstitutional stop and frisk incident." (*Id.* at 11, ¶ 66.) Even though Defendants knew that the stop and frisk was unconstitutional and that the charges associated with it were dismissed, on about July 2013, Defendants suspended Williams for ten days (the "July 2013 Suspension"). (*Id.* at 11, ¶¶ 67, 68.) Defendants did not take similar action against a female Caucasian employee who was arrested and charged with theft of property. (*Id.* at 12, ¶¶ 70, 71.) Defendants also ignored the misconduct of Caucasian employees, while taking punitive disciplinary measures against non-Caucasian employees for "trumped up infractions" or the slight deviations from established code of conduct. (*Id.* at 12, ¶ 72.) Similarly, Caucasian employees who exhibited poor work performance were not subject to disciplinary measures like the non-Caucasian employees. (*Id.* at 12–13, ¶¶ 75–78.) Specifically,

Defendants "routinely ignored the misconduct of Caucasian employees," including two female Caucasian employees, Amy Carvelli-Thompson and Maryann Dirruso. (*Id.*) According to Williams, Defendant O'Brien personally witnessed Dirruso "berate and use profane language during her interaction with a customer," yet Defendant O'Brien "took no disciplinary action against Dirruso for her misconduct." (*Id.* at 13, ¶ 78.)

On another occasion, Defendant Accetta instituted disciplinary charges against Williams after Defendant Loehr accused Williams of being insubordinate towards her during a January 24, 2014 meeting, despite the fact that Defendant Loehr was not Williams's supervisor and Defendant Accetta allegedly knew the accusation was false. (*Id.* at 3, ¶¶ 15–16; 13–14, ¶¶ 80–82.) As a result of this disciplinary charge, Williams was placed on probation for one year. (*Id.* at 14, ¶ 83.)

Defendants terminated Williams's employment on June 9, 2015 (the "June 2015 Termination"), citing Williams's alleged violation of the time and attendance rules. (*Id.* at 15, ¶¶ 89–90.) However, Caucasian employees had routinely violated the time and attendance rules without being subject to such disciplinary action, and none of the Caucasian employees "faced the severe sanction of summary termination of their employment." (*Id.* at 15, ¶¶ 92–93.)

## II.     <u>Procedural History</u>

Plaintiff initiated this action by filing a complaint against OCA and the Individual Defendants on March 21, 2016. (Doc. 1.) On May 3, 2016, Plaintiff filed his first amended complaint. (Doc. 5.) On July 1, 2016, OCA filed its answer to the first amended complaint, (Doc. 11.) On the same day, the Individual Defendants filed a letter requesting a pre-motion conference to discuss the Individual Defendants' anticipated motion to dismiss the first amended complaint, (Doc. 12), and Plaintiff filed his response letter on July 11, 2016, (Doc. 17). The

parties appeared before me for a pre-motion conference on July 27, 2016. (Doc. 15.) At the pre-motion conference, I ordered that a mediation session scheduled for September 9, 2016 go forward as planned, and the parties agreed to a briefing schedule to commence after September 9, 2016. (Doc. 19.) After mediation was unsuccessful in resolving any issue in the case, (Doc. 18), the Individual Defendants filed a motion to dismiss the first amended complaint on September 28, 2016, (Doc. 21).

On December 6, 2016, in lieu of filing his opposition, Plaintiff cross-moved to file a second amended complaint, which sought to eliminate all claims under § 1981 and the New York City Human Rights Law. (Docs. 28–30.) By order dated December 12, 2016, I granted Plaintiff's cross-motion for leave to amend, and denied Defendants' motion to dismiss the first amended complaint as moot with permission to re-file. (Doc. 32.) I further ordered that the parties meet and confer about the possibility of proceeding with discovery while any anticipated motion to dismiss was pending, and requested that they provide me with a proposed case management plan or inform me of any disagreements by December 23, 2016. (*Id.*) On December 13, 2016, Plaintiff filed his second amended complaint ("Second Amended Complaint"). (Doc. 33.)

After a number of disputes regarding discovery arose, (*see* Docs. 34–39), the parties were directed to appear before me on February 8, 2017 to discuss discovery, (Doc. 39). On January 13, 2017, the Individual Defendants filed the instant motion to partially dismiss the Second Amended Complaint and accompanying memorandum of law. (Docs. 40–41.) Plaintiff filed his opposition on February 10, 2017, (Doc. 47), and Defendants filed their reply on February 24, 2017, (Doc. 48). The parties appeared before me on February 8, 2017 to discuss the discovery disputes, and discovery with respect to the Individual Defendants was stayed pending the

resolution of the instant motion.

### III.   <u>Legal Standard</u>

#### A.   *Federal Rule of Civil Procedure 12(b)(1)*

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova*, 201 F.3d at 113.  If challenged, a plaintiff is required to show that subject matter jurisdiction exists by a preponderance of the evidence, *id.*, and in analyzing such a challenge "the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).  Furthermore, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings." *Id.*

#### B.   *Federal Rule of Civil Procedure 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  "Plausibility . . . depends on a host of considerations:

the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* In the employment discrimination context, this pleading standard applies in conjunction with the employment discrimination pleading standards described below. *See Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010).

## IV.    Discussion

### A.    *Sovereign Immunity*

Count II of the Second Amended Complaint asserts claims against the Individual Defendants in their official capacities. (SAC 17–18, ¶¶ 100–05.) The Individual Defendants argue that I lack jurisdiction over the claims brought against them in their official capacity because they are barred by the state's sovereign immunity.

#### 1.  Applicable Law

The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been interpreted to "bar federal suits against state governments by a state's own citizens," and "applies unless a state affirmatively waives its immunity." *Morales v. New York*, 22 F. Supp. 3d 256, 267 (S.D.N.Y. 2014) (citations

omitted).  "[S]overeign immunity extends to claims against state officials for acts committed in their official capacities."  *Blige v. City Univ. of N.Y.*, No. 15 Civ. 08873 (GBD) (KHP), 2017 WL 1064716, at *2 (S.D.N.Y. Mar. 21, 2017).  "A claim that is barred by a state's sovereign immunity must be dismissed pursuant to the Eleventh Amendment for lack of subject matter jurisdiction."  *Morales*, 22 F. Supp. 3d at 268.

Under the doctrine of *Ex parte Young*, plaintiff may, however, "sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."  *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007).  "Whether a litigant's claim falls under the *Ex parte Young* exception to the Eleventh Amendment's bar against suing a state is a 'straightforward inquiry' that asks "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'"  *In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002)).

## 2.  Application

The State of New York has not waived immunity and to the extent the Second Amended Complaint seeks monetary damages on Count II, it is barred by the Eleventh Amendment and must be dismissed.  *See Dean v. Univ. at Buffalo Sch. Of Med. & Biomedical Sciences*, 804 F.3d 178, 193 (2d Cir. 2015) ("The Eleventh Amendment bars a damages action in federal court against a state and its officials when acting in their official capacity unless the state has waived its sovereign immunity or Congress has abrogated it.").  Similarly, to the extent the Second Amended Complaint seeks a "declaration that the acts and practices complained of" in the Second Amended Complaint are in violation of federal law, (SAC 19, ¶ 1), it must also be dismissed because it relates to past violations and as such is barred by the Eleventh Amendment,

*see Green v. Mansour*, 474 U.S. 64, 73 (1985).

As relief for the alleged violations in Count II, Plaintiff also seeks to be reinstated to his previous position at OCA. The Individual Defendants claim that none of them are in a position to reinstate Williams to his former position, and have signed declarations attesting to that fact. (*See* Defs.' Mem. 3–4; O'Brien Decl. ¶ 6; Loehr Decl. ¶¶ 7–8; Accetta Decl. ¶¶ 6–9.)[4] Plaintiff does not contest the fact that the Individual Defendants have no authority to reinstate him to his prior position, and thus cannot provide the relief he seeks. (Pl.'s Mem. 14.)[5] Instead, he argues that he seeks prospective relief in the form of an injunction barring the Individual Defendants from future discriminatory conduct. (*Id.* at 14–15.) However, because Plaintiff no longer works for OCA, and none of the Individual Defendants are alleged to be involved in ongoing violation of federal law, there is no prospective relief available, and the Eleventh Amendment thus bars Plaintiff's claims against the Individual Defendants in their official capacities. Therefore, the Individual Defendants' motion to dismiss Plaintiff's claims brought against them in their official capacity is granted, and Count II is dismissed.

### B.     *Hostile Work Environment Claims*

Count I of the Second Amended Complaint asserts a claim for hostile work environment (SAC 16, ¶ 95.)[6] The Individual Defendants seek dismissal of Plaintiff's hostile work

---

[4] "Defs.' Mem." refers to Memorandum of Law in Support of the Individual State Defendants' Motion for Partial Dismissal of the Second Amended Complaint. (Doc. 41.) "O'Brien Decl." refers to the Declaration of Johanna O'Brien in Support of Defendants' Motion for Partial Dismissal dated January 11, 2017. (Doc. 43.) "Loehr Decl." refers to the Declaration of Susan Newman Loehr in Support of Defendants' Motion for Partial Dismissal dated January 11, 2017. (Doc. 44.) "Accetta Decl." refers to the Declaration of Joseph M. Accetta in Support of Defendants' Motion for Partial Dismissal dated January 11, 2017. (Doc. 42.)

[5] "Pl.'s Mem." refers to Plaintiff's Memorandum of Law in Opposition to Defendants' Motion. (Doc. 47.)

[6] Count I of the Second Amended Complaint asserts that "Defendant OCA" forced Plaintiff "to work in a hostile environment." (SAC 16, ¶ 95.) Plaintiff argues that a review of the foregoing paragraphs in the Second Amended Complaint makes clear that Williams also asserts his hostile work environment claim against the Individual Defendants. (Pl.'s Mem. 2.) Plaintiff addressed this issue in his opposition, but the Individual Defendants failed address the issue in their reply and thus may have abandoned this argument. *See Persh v. Petersen*, No. 15-CV-141, 2015 WL 5326173, at *6 (S.D.N.Y. Sept. 14, 2015) ("Plaintiff responded to Defendant's service argument, but

environment claim, as against the Individual Defendants, for failure to state a claim.

### 1. Applicable Law

To state a claim for hostile work environment under Title VII, "a plaintiff must show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Littlejohn v. City of New York*, 795 F.3d 297, 320–21 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive." *Id.* at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2016)); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011) ("Hostile work environment claims are meant to protect individuals from abuse and trauma that is severe." (citation omitted)). Plaintiff must allege that the incidents were "more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo*, 770 F.3d at 114). I consider the totality of the circumstances in evaluating a hostile work environment claim, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S at 23.

A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards [him] as a result of [his] membership in a protected class." *Bermudez*, 783 F.

---

Defendant did not mention service at all in his reply brief, and therefore may have abandoned it."). Since OCA cannot be liable except through the actions of its employees, I will address the merits of the argument.

Supp. 2d at 578.  "[I]t is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11 Civ. 3154(AT), 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)); *see also Rogers v. Fashion Inst. of Tech.*, No. 14 Civ. 6420 (AT) 2016 WL 889590, at *8 (S.D.N.Y. Feb. 26, 2016) ("Plaintiff must plausibly allege a basis to infer that Defendants took these unfavorable actions against him because of his race.").

## 2.  Application

The Second Amended Complaint alleges that Plaintiff's subordinates "openly challenged" his authority, disregarded his directives, and complained to management, who, instead of remedying the situation, reprimanded Plaintiff and tried to convince him to relinquish his supervisory authority.  Plaintiff also alleges that he was unjustly subjected to poor performance reviews and was given additional duties above and beyond his regular assignments. Even assuming that this conduct was motivated by discriminatory animus, these allegations do not support a finding of a hostile work environment that is "so severe or pervasive as to have altered the conditions of [Plaintiff's] environment." *Littlejohn*, 795 F.3d at 321 (affirming dismissal of hostile work environment claim where employer made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, distanced herself and declined to meet with plaintiff, required plaintiff to recreate work, wrongfully reprimanded plaintiff, increased plaintiff's schedule, and was sarcastic to plaintiff); *Fleming v. MaxMara USA, Inc.*, 371 F. App'x 115, 119 (2d Cir. 2010) (summary order) (affirming dismissal of hostile work environment claim where defendants excluded plaintiff from meetings, excessively criticized her work, refused to answer her work-related questions, imposed additional duties on her, and threw

books and sent rude emails to her); *Trachtenberg v. Dep't of Educ. of N.Y.*, 937 F. Supp. 2d 460, 472–73 (S.D.N.Y. 2013) (dismissing hostile work environment claim where plaintiff alleged that, on account of her age, she was subjected to excessive scrutiny, negative performance evaluations, a lack of training opportunities, and a poorly ventilated office); *Davis-Molinia v. Port Auth. of N.Y. & N.J.,* No. 08 CV 7586(GBD), 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011) (finding no hostile work environment where plaintiff was excluded from meetings, deliberately avoided, yelled at, and talked down to), *aff'd*, 488 F. App'x 530 (2d Cir. 2012).

The cases Plaintiff cites in support of his argument are materially distinguishable. *See Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) (plaintiff alleged hostile work environment where she regularly observed supervisor watching and handling pornographic videos, and discovered pornographic material on her workplace computer); *Drew*, 688 F. Supp. 2d at 280 (plaintiff alleged hostile work environment where supervisor was harsh and critical, made unreasonable demands, often raised his voice at and directed profanity towards plaintiff, told plaintiff he was permitted to curse at him as plaintiff's boss, and treated Caucasian employees much more favorably). Therefore, the Individual Defendants' motion to dismiss Plaintiff's hostile work environment claim under Title VII[7] against the Individual Defendants is granted, and the claim is dismissed.

## C. *Retaliation Claims*

Counts I, III and IV of the Second Amended Complaint assert retaliation claims under Title VII, § 1983, and the NYSHRL.[8] (SAC 16, ¶ 95; 18, ¶ 108; 19 ¶ 114.) The Individual

---

[7] While Count I only asserts a hostile environment claim under Title VII, I note that Plaintiff's hostile work environment would fail for the same reasons under § 1983 and the NYSHRL. *See Littlejohn*, 795 F.3d at 320–21 (explaining that the same standards apply under Title VII, § 1981, or § 1983); *Lenart v. Coach Inc.*, 131 F. Supp. 3d 61, 66 (S.D.N.Y. 2015) (applying same standard under the NYSHRL).

[8] Count I of the Second Amended Complaint asserts that "Defendant OCA . . . retaliated against Williams for complaining of Defendant's discriminatory conduct." (SAC 16, ¶ 95.) Plaintiff argues that a review of the

Defendants seek dismissal, in substantial part, of Plaintiff's retaliation claims.  (*See* Defs.' Mem. 18–21.)  In addition to arguing that the Individual Defendants were not personally involved in certain retaliatory actions, (*see infra* Section III.D), the Individual Defendants argue that Plaintiff's retaliation claims against Defendants Accetta and O'Brien should be dismissed because Williams fails to plead the requisite adverse employment action.

## 1. Applicable Law

To state a claim for retaliation, a plaintiff must plausibly allege "(1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (internal quotation marks omitted).  An adverse employment action in the context of a retaliation claim "covers a broader range of conduct than does the adverse-action standard for claims of discrimination under Title VII" and "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* (citation omitted).  A plaintiff must also plausibly plead "a connection between the act and his engagement in protected activity." *Id.*  "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." *Id.*  Further, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.*  "[T]he elements of a retaliation claim based on an equal protection violation under § 1983 mirror those under Title VII," *id.* at 91, as do claims under the NYSHRL, *see McMenemy v. City of Rochester*, 241 F.3d 279, 283 n.1 (2d Cir. 2001).

---

foregoing paragraphs in the Second Amended Complaint makes clear that Williams also asserts his retaliation claim against the Individual Defendants.  (Pl.'s Mem. 2.)  As noted above, Plaintiff addressed this issue in his opposition, but the Individual Defendants failed address the issue in their reply and thus may have abandoned this argument. *See Persh*, 2015 WL 5326173, at *6 ("Plaintiff responded to Defendant's service argument, but Defendant did not mention service at all in his reply brief, and therefore may have abandoned it.").  Since OCA cannot be liable except through the actions of its employees, I will address the merits of the argument.

## 2. Application

Here, the Second Amended Complaint states that Plaintiff complained about discriminatory treatment by his subordinates to Defendants Accetta and O'Brien, (SAC 8, ¶ 47), who then took no remedial action and instead subjected Plaintiff to additional scrutiny and criticism, including calling Plaintiff in for meetings, reprimanding him, and attempting to force him to relinquish supervisory authority, (*id.* at 8, ¶¶ 47–51). The Second Amended Complaint further alleges that when Plaintiff complained to Defendant Accetta about Defendant O'Brien's discriminatory treatment, (*id.* at 9, ¶ 53), Defendant Accetta took no remedial action and instead assigned Defendant O'Brien to conduct Plaintiff's performance review, (*id.* at 9, ¶ 54). Plaintiff also alleges that Defendant Accetta falsely accused Plaintiff of being absent without leave despite previously approving the time off, (*id.* at 10, ¶ 59), and that Defendant O'Brien denied Plaintiff the opportunity to interview for a promotional position, (*id.* at 10, ¶ 60). These actions are sufficient to plead adverse employment actions, as they "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). Therefore, the Individual Defendants' motion to dismiss Plaintiff's retaliation claims under § 1983 and the NYSHRL against Defendants Accetta and O'Brien for failure to plead the requisite adverse employment action is denied.

## D. *Individual Defendants' Personal Involvement*

Counts II, III, and IV allege discrimination, hostile work environment, and retaliation claims under § 1983 and the NYSHRL. The Individual Defendants seek dismissal of Counts II, III, and IV against the Individual Defendants to the extent they allege claims based on the July 2013 Suspension and June 2015 Termination, and against Defendant O'Brien to the extent they

allege claims based on the decision to place Plaintiff on probation. Specifically, the Individual Defendants argue that the Second Amended Complaint does not allege that (1) the Individual Defendants were personally involved in the July 2013 Suspension; (2) the Individual Defendants were personally involved in the June 2015 Termination; and (3) Defendant O'Brien was personally involved in Plaintiff being placed on probation as a result of his alleged conduct during the January 24, 2014 meeting. (Defs.' Mem. 13–16.)

### 1. Applicable Law

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).

> Personal involvement can be established by showing that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring."

*Littlejohn*, 795 F.3d at 314 (quoting *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 127 (2d Cir. 2004)). A plaintiff "must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. Finally, as with individual liability, in the § 1983 context, a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic." *Raspardo*, 770 F.3d at 116 (citations omitted). Likewise, a claim under NYSHRL must allege each defendant's "actual participat[ion]." *See Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004).

## 2. Application

First, because I find that the Second Amended Complaint fails to state a hostile work environment claim, (*supra* Section III.B), I need not decide whether the Individual Defendants were personally involved in that conduct.

Second, I agree with Defendants that the Second Amended Complaint fails to allege how any of the Individual Defendants were involved in the July 2013 Suspension following the "unconstitutional stop and frisk." (Defs.' Mem. 15.) The Second Amended Complaint attributes Plaintiff's suspension to "Defendants" generally, without specifying which if any Individual Defendants were involved. (SAC 11, ¶¶ 66–68.) Therefore, the discrimination and retaliation claims under § 1983 and the NYSHRL stemming from the July 2013 Suspension are dismissed as to the Individual Defendants.

Third, I agree with Defendants that the Second Amended Complaint fails to allege how Defendant O'Brien was involved in the decision to place Plaintiff on probation following the January 24, 2014 meeting. (Defs.' Mem. 15.)[9] The Second Amended Complaint states only that Defendant Loehr made false allegations against Plaintiff and that Defendant Accetta was both at the meeting and involved in the decision to institute disciplinary charges. There is no allegation that Defendant O'Brien was even at the meeting or involved with the decision to bring disciplinary charges. Therefore, the discrimination and retaliation claims under § 1983 and the NYSHRL stemming from the decision to place Plaintiff on probation are dismissed as to Defendant O'Brien.

---

[9] Defendants Accetta and Loehr do not move to dismiss for failure to allege their personal involvement in the probation decision. (Defs.' Mem. 15 n.4.)

Fourth, I reject Defendants' argument that none of the Individual Defendants were involved in the June 2015 Termination. Because the Second Amended Complaint alleges that Plaintiff's termination stemmed from Plaintiff being placed on probation, (SAC 15, ¶ 89 ("In further discrimination and retaliation against Williams, Defendants used his now converted probationary status to take additional punitive measures against Williams and terminate his employment on or about June 9, 2015.")), which was allegedly due to the involvement of Defendants Accetta and Loehr, the Second Amended Complaint states a plausible claim that those Defendants were also personally involved in the June 2015 Termination. Therefore, the discrimination and retaliation claims under § 1983 and the NYSHRL stemming from the decision to terminate Plaintiff's employment are dismissed as to only Defendant O'Brien.

Fifth, because the Second Amended Complaint does not allege that Plaintiff complained to Defendant Loehr about his concerns about discrimination or state that she somehow became aware of his concerns, it does not state a claim of retaliation under § 1983 and the NYSHRL against her. The Second Amended Complaint alleges only that Plaintiff reported his concerns about discrimination in the workplace to Defendants Accetta and O'Brien. Therefore, the retaliation claims under § 1983 and the NYSHRL against Defendant Loehr are dismissed.

Accordingly, for the reasons stated above, (1) the discrimination and retaliation claims under § 1983 and the NYSHRL stemming from the July 2013 Suspension are dismissed as to the Individual Defendants; (2) the discrimination and retaliation claims under § 1983 and the NYSHRL stemming from the decision to place Plaintiff on probation are dismissed as to Defendant O'Brien; (3) the discrimination and retaliation claims under § 1983 and the NYSHRL stemming from the June 2015 Termination are dismissed as to Defendant O'Brien; and (4) the retaliation claims under § 1983 and the NYSHRL against Defendant Loehr are dismissed.

## E. *Sex Discrimination Claims*

Count IV of the Second Amended Complaint asserts discrimination claims based on sex and race under the NYSHRL. (SAC 19 ¶ 114.) Specifically, Plaintiff alleges disparate treatment on the basis of sex and race by the Individual Defendants. (*Id.* at 19, ¶¶ 113–15.) In the instant motion, the Individual Defendants seek to dismiss Count IV to the extent it states a sex discrimination claim. (*See* Defs.' Mem. 21–22.)

### 1. Applicable Law

Discrimination claims brought under the NYSHRL are governed by the same standards as discrimination claims brought under Title VII. *See Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 681–82 (S.D.N.Y. 2009) ("New York courts require the same showing for claims brought under the NYSHRL as federal employment discrimination claims brought under Title VII . . . ."). To state a claim for discrimination under the NYSHRL, the "plaintiff must initially establish a *prima facie* case of discrimination by showing that (1) he is a member of a protected class; (2) he is qualified for his position; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Green v. Jacob & Co. Watches, Inc.*, No. 15 Civ. 3611 (PAC), 2017 WL 1208596, at *5 (S.D.N.Y. Mar. 31, 2017) (quoting *Vega*, 801 F.3d at 83).

"A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000); *see also Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) ("An 'adverse employment action' is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." (quoting *Galabya*, 202 F.3d at 640)). This can include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities," or "a disproportionately heavy workload." *Vega*, 801 F.3d at 85 (citations omitted).

At the motion to dismiss stage, "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016). This is a "low bar" and includes, but is not limited to "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Lewis v. Roosevelt Island Operating Corp.*, No. 17-cv-03071 (ALC) (SN), 2017 WL 1169647, at *5 (S.D.N.Y. Mar. 28, 2017) (quoting *Littlejohn*, 795 F.3d at 312); *see also Crawley v. Macy's Retail Holdings, Inc.*, No. 15 Civ. 2228 (KPF), 2016 WL 6993777, at *7 (S.D.N.Y. Nov. 29, 2016) (noting that, at the motion to dismiss stage, a plaintiff need only "give plausible support to a *minimal inference* of discriminatory motivation" (quoting *Littlejohn*, 795 F.3d at 111)).

Where a plaintiff relies on the disparate treatment to support his discrimination claim, he must allege that "[he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)); *see also Crawley*, 2016 WL 6993777, at *7 (dismissing sex discrimination claim under Title VII and the NYSHRL because plaintiff failed to allege that she and her comparator were "similarly situated in all material respects"). While the plaintiff's and the comparator's circumstances "must bear a 'reasonably close resemblance,'" they "need not be 'identical.'" *Brown*, 756 F.3d at 230 (quoting *Graham*, 230 F.3d at 40). "In the context of employee discipline[,] the plaintiff and the

similarly situated employee must have engaged in comparable conduct, that is, conduct of comparable seriousness." *Shein v. New York City Dep't of Educ.*, No. 15cv4236 (DLC), 2016 WL 676458, at \*5 (S.D.N.Y. Feb. 18, 2016) (quoting *Raspardo*, 770 F.3d at 126). In addition, "[e]mployees may be similarly situated . . . if they are 'subject to the same standards governing performance evaluation and discipline.'" *Brown*, 756 F.3d at 230 (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999)).

## 2. Application

As an initial matter, the Individual Defendants do not argue that Plaintiff is a member of a protected class, is qualified for his position, and suffered an adverse employment action. The Individual Defendants instead argue that Plaintiff has failed to plausibly allege an inference of discrimination. I agree. Assuming the facts in the Second Amended Complaint to be true and drawing all inferences in Williams's favor, as I must, there are only two non-conclusory allegations in the Second Amended Complaint relating to sex discrimination, both of which are founded on disparate treatment. First, Defendants suspended Plaintiff in July 2013 for his prior arrest, while "Defendants failed to take any action against a female Caucasian employee who was arrested and charged with engaging in criminal activity."[10] (SAC 12, ¶¶ 70–71). Second, Defendants "routinely ignored the misconduct of Caucasian employees," including two female Caucasian employees, Amy Carvelli-Thompson and Maryann Dirruso.[11] (*Id.* at 12–13, ¶¶ 75–

---

[10] I note that Plaintiff's opposition does not point to a single allegation in the Second Amended Complaint that relates to discrimination based on sex. (*See* Pl.'s Mem. 10–11.) Instead, Plaintiff's opposition points only to allegations relating to discrimination based on race. (*See id.*) None of these allegations or arguments address Defendant's motion to dismiss Count IV for failure to allege a sex discrimination claim.

[11] Plaintiff also appears to identify two male Caucasian employees as comparators in this allegation. However, "[d]ifferent treatment of similarly situated individuals within [Plaintiff's] same protected class does not create an inference of discrimination," *Weiss v. La Suisse*, 260 F. Supp. 2d 644, 655 (S.D.N.Y. 2003), and the more favorable treatment of other male employees only undermines Plaintiff's claim of an inference of discriminatory intent based on sex, *see Henny v. New York*, 842 F. Supp. 2d 530, 555 n.24 (S.D.N.Y. 2012) (plaintiff's argument that she was treated differently than other members of her protected class undermined any inference that she was terminated

78.)  Plaintiff further alleges that Defendant O'Brien personally witnessed Dirruso "berate and use profane language during her interaction with a customer," yet Defendant O'Brien "took no disciplinary action against Dirruso for her misconduct."  (*Id.* at 13, ¶ 78.)

These allegations are insufficient even under the low pleading standard.  *See Crawley*, 2016 WL 6993777, at *7 (dismissing sex discrimination claim under Title VII and the NYSHRL for failure to state a claim).  As explained above, (*supra* Section III.D), Plaintiff fails to allege how any of the Individual Defendants were personally involved in the July 2013 Suspension.  Moreover, even if such personal involvement is assumed, Plaintiff fails to allege that he is "similarly situated in all material aspects" to his comparators with respect to both the July 2013 Suspension and the allegation involving Dirruso's misconduct involving a customer.  *See Crawley*, 2016 WL 6993777, at *7.  Although Plaintiff identifies his comparators by name and alleges that they are "employees," Williams does not allege any facts showing how he was similarly situated to these employees.  For example, Plaintiff does not allege that he was employed in the same department, subject to the same supervisors, or of a similar experience level as his comparators.  *See Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *5 (S.D.N.Y. Mar. 29, 2016) (dismissing disparate treatment claim where plaintiff "fail[ed] to plead any facts regarding how [plaintiff's comparators'] identities, experience levels, and conduct compared to [plaintiff's]"); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016) (allowing disparate treatment claim where plaintiff identified one comparator by name and alleged he was subject to the same supervisor).  Accordingly, the Individual Defendants' motion to dismiss Plaintiff's sex discrimination claim is granted.

---

based on discriminatory animus).

## V.    Conclusion

For the reasons stated here, the Individual Defendants' motion for partial dismissal, (Doc. 40), is GRANTED IN PART and DENIED IN PART.  Count II is dismissed in its entirety. Counts I, III and IV are dismissed in part, as they fail to state a claim for:  (1) hostile work environment against the Individual Defendants, (2) discrimination and retaliation under § 1983 and the NYSHRL against the Individual Defendants based on Plaintiff's July 2013 Suspension; (3) discrimination and retaliation under § 1983 and the NYSHRL against Defendant O'Brien based on the decision to place Plaintiff on probation; (4) discrimination and retaliation under § 1983 and the NYSHRL against Defendant O'Brien based on the June 2015 Termination; (5) retaliation under § 1983 and the NYSHRL against Defendant Loehr; and (6) sex discrimination under the NYSHRL against the Individual Defendants.  The parties are instructed to meet and confer regarding the scheduling of discovery and should submit a proposed case management plan and scheduling order on or before October 27, 2017.  The Clerk of Court is respectfully directed to terminate the pending motion at Document 40.

SO ORDERED.

Dated:  September 30, 2017
         New York, New York

Vernon S. Broderick
United States District Judge